## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## CEDAR RAPIDS DIVISION

MICHAEL MILES LINDSAY,

        Plaintiff,

vs.

NICHOLE FRANCIS, et al.,

        Defendants.

No.  C19-29-LTS

**MEMORANDUM
OPINION AND ORDER**

―――――――――――――――

## *I.     INTRODUCTION*

This matter is before me on a motion (Doc. 16) for summary judgment filed by defendants Nichole Francis, A.R.N.P., Stephanie Schmidt, L.P.N., Daniel Forbes and Franklin Selden.[1]  Pro se plaintiff Michael Lindsay has not responded to the motion.  Oral argument is not necessary.  *See* Local Rule 7(c).

## *II.     PROCEDURAL HISTORY*

On March 6, 2019, Lindsay filed a motion for leave to proceed in forma pauperis, attaching a 42 U.S.C. § 1983 complaint.  Docs. 1, 1-1.  He subsequently filed a motion for discovery (Doc. 2), a motion to appoint counsel (Doc. 4), an amended § 1983 complaint (Doc. 5) and a supplement (Doc. 6).  On March 30, 2020, I granted Lindsay's motion to proceed in forma pauperis.  Doc. 7.  On initial review, I found Lindsay alleged a plausible deliberate indifference claim.  *Id.* at 6.  I denied his motion to appoint counsel,

---

[1] Lindsay sued these four defendants along with four individuals he labels as John Doe (an Iowa Medical and Classification Center (IMCC) physician), Jane Doe (an IMCC pharmacist), Jane Doe-1 (an IMCC registered nurse) and Jane Doe-2 (an IMCC registered nurse).  Lindsay has yet to identify these defendants and, as a result, they have not been served.  In this order, "the defendants" refers to all eight defendants, "named defendants" refers to Francis, Schmidt, Forbes and Selden, and "Doe defendants" refers to the four Does.

finding the issues presented straightforward and anticipating limited discovery. *Id.* at 7. I denied Lindsay's motion for discovery without prejudice as premature. *Id.* I ordered the Clerk of Court serve the defendants via the Iowa Attorney General's Office. *Id.* at 8. On May 29, 2020, the named defendants filed an answer. Doc. 11. On October 1, 2020, the named defendants filed this motion. Doc. 16. Lindsay did not respond to the motion.[2]

### III.   RELEVANT FACTS

As noted above, Lindsay failed to respond to the named defendants' motion for summary judgment. Thus, he has not addressed the named defendants' statement of undisputed material facts. Doc. 16-2. "[A] failure to respond to an individual statement of material fact, with appropriate appendix citations, may constitute an admission of that fact." Local Rule 56(b); *see also* FED. R. CIV. P. 56(e). Therefore, I will treat as admitted all of the facts set forth in the named defendants' statement.

### A.   *Findings of Fact*

Lindsay arrived at the IMCC, which is a DOC facility, on October 26, 2018, following a parole revocation. Doc. 16-2 at 2. During an intake screening, staff noted his diabetes, prescribed him medication and allowed him a modified diet. *Id.* Lindsay met with Francis on October 30, 2018, and she designed a plan to manage Lindsay's diabetes. *Id.* at 4. The plan expressly incorporated another provider's insulin order. *See* Doc. 17 at 7 (physician assistant prescribing insulin with dosages determined on a "sliding scale" based on blood sugar readings) and 20 (Francis' plan providing for Lindsay to have his blood sugar checked three times a day and follow the "sliding scale orders as

---

[2] Lindsay last substantively participated in this lawsuit by filing a supplement on August 12, 2019. The Iowa Corrections Offender Network database indicated that he was on escape status with a warrant requested since March 2020. Doc. 17 at 5. On May 13, 2021, Lindsay filed a letter (Doc. 18) indicating he had returned to the IMCC, which is confirmed by the publicly available Iowa Department of Corrections (DOC) inmate listing.

needed"). Francis also discontinued Lindsay's detemir prescription (a nightly insulin injection). Doc. 16-2 at 4.

Lindsay's blood sugar levels fluctuated throughout this period of time. *Id.* at 3–5. In response, staff would provide him with snacks or insulin. *Id.* For example, on November 2, 2018, staff administered a twelve-unit dose of insulin in response to his blood sugar measuring 414 mg/dL.[3] *Id.* at 4. On November 5, 2018, prior to bedtime, Schmidt measured Lindsay's blood sugar at 506 mg/dL. *Id.* at 5. She contacted physician John Doe, who ordered twelve units of insulin that she then administered. *Id.*

In the early morning of November 6, 2018, Lindsay's cellmates alerted a unit officer that Lindsay was seizing and unresponsive. *Id.* The officer called an emergency code and medical staff arrived to treat him. *Id.* Forbes and Selden, correctional officers, were among the staff who responded to the emergency code. *Id.* at 10. Staff treated this hypoglycemic event and Lindsay became alert. *Id.* at 5–6. Lindsay expressed to staff that he disagreed with the quantity of insulin administered to him. *Id.* at 6. Medical staff continued to attend to Lindsay in the following days regarding complaints of injuries he suffered during the seizure. *Id.* His blood sugar continued fluctuating. *Id.* at 6–7.

On November 14, 2018, Lindsay's blood sugar was measured at 378 mg/dL. *Id.* at 7. A nurse administered 14 units of insulin based on the sliding scale order. *Id.* Another nurse realized that this quantity was a transcription error and was too high. *Id.* Staff ordered snacks to stabilize Lindsay's blood sugar and monitored him that evening. *Id.* Staff rectified the transcription error approximately ten hours after its discovery. *Id.* Staff continued to attempt to manage Lindsay's diabetes and Francis referred him to the University of Iowa Hospitals and Clinics (UIHC) endocrinology department. *Id.* at 8.

---

[3] Normal blood sugar levels are less than 100 mg/dL after fasting for at least 8 hours or less than 140 mg/dL two hours after eating. For most non-diabetics, blood sugar levels before meals are between 70 and 80 mg/dL. Michael Dansinger, *High Blood Sugar, Diabetes, and Your Body*, WebMD (Dec. 6, 2020), https://www.webmd.com/diabetes/how-sugar-affects-diabetes (last visited 5/26/2021).

She and other IMCC staff implemented treatment recommendation resulting from Lindsay's UIHC consultations.  *Id.* at 8–9.

## B.    *Allegations from the Amended Complaint*

The factual allegations Lindsay made in his complaint largely mirror the named defendants' statement of facts but there are some material differences.  Lindsay makes the following factual allegations of note: On November 5, 2018, Jane Doe-1 and Jane Doe-2 measured his blood sugar three times prior to Schmidt's measurement.  Doc. 5 at 4–6.  His blood sugar measured over 300 mg/dL each time yet Jane Doe-1 and Jane Doe-2 denied him insulin, stating there was no prescription for it.  *Id.*  These denials resulted from Francis failing to provide for insulin in her treatment plan.  *Id.* at 4.  Before Schmidt administered the twelve units of insulin at bedtime on November 5, 2018, Lindsay protested the quantity but both Schmidt and physician John Doe ignored his concern.  *Id.* at 6.  When he suffered a seizure that night, Forbes and Selden laughed and joked about his condition during the seizure event.  *Id.* at 7.  During the seizure, he bit his tongue (resulting in an infection) and fractured his elbow.  *Id.*

Regarding the November 15, 2018, transcription error, Lindsay protested the quantity prescribed but relented when Jane Doe-2 showed him that John Doe-1 had entered the order.[4]  *Id.* at 7.  This error resulted from pharmacist Jane Doe failing to manage his medication.  *Id.* at 7–8.  The subsequent monitoring to which IMCC staff subjected him deprived him of sleep and caused him emotional distress.  *Id.* at 8.  In his supplement, Lindsay includes an August 1, 2019, medical record indicating a bite wound on his thigh.  Doc. 6 at 4.  The record indicates that the wound appeared infected and that the wound's dressing had not been changed as needed.[5]  *Id.*

---

[4] It is unclear whether Lindsay intends John Doe and John Doe-1 to refer to the same person or different persons.

[5] Lindsay offers no allegations or argument concerning this record.  The named defendants do not address it.  What the record indicates is that IMCC staff became aware that Lindsay's

Lindsay alleges that he has exhausted remedies per the Prison Litigation Reform Act (PLRA).  *Id.* at 8.  He contends that the defendants' conduct constitutes deliberate indifference to his medical needs in violation of the Eighth Amendment and constitutes violations of his Fourteenth Amendment due process rights.  *Id.*  He seeks compensatory damages, punitive damages, costs and an injunction ordering the defendants to stop denying him adequate medical care.  *Id.* at 9.

## IV.   SUMMARY JUDGMENT STANDARDS

Any party may move for summary judgment regarding all or any part of the claims asserted in a case.  FED. R. CIV. P. 56(a).  Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A material fact is one that "'might affect the outcome of the suit under the governing law.'"  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Thus, "the substantive law will identify which facts are material."  *Id.*  Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not.  *Id.*

An issue of material fact is genuine if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), or when "'a reasonable jury could

---

wound's dressing had not been changed as needed and planned to rectify the situation.  Doc. 6 at 4.  This incident has no apparent relation to the other events Lindsay alleges and the named defendants address.  Without further context or argument, this lone record is insufficient to establish deliberate indifference related to this medical condition.  *Cf. Dulany v. Carnahan*, 132 F.3d 1234, 1245 (8th Cir. 1997) ("A number of individual and isolated incidences of medical malpractice or negligence do not amount to deliberate indifference without some specific threat of harm from a related system wide deficiency . . . .").  Therefore, I will not further consider it in evaluating this motion.

return a verdict for the nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). Evidence that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249–50, does not make an issue of material fact genuine.

As such, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248–49. The party moving for entry of summary judgment bears "the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or otherwise, designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005). The nonmovant must show an alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322.

In determining if a genuine issue of material fact is present, I must view the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587–88. Further, I must give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Id.* However, "because we view the facts in the light most favorable to the nonmoving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Instead, "the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376–77 (8th Cir. 1996).

## V.    DISCUSSION

### A.    *Legal standard*

"[Liability under 42 U.S.C. § 1983 may be imposed] for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." *Baker v. McCollan*, 443 U.S. 137, 146 (1979). "Prison doctors and guards violate the Eighth Amendment when they act with 'deliberate indifference to [an inmate's] serious medical needs.'" *Bender v. Regier*, 385 F.3d 1133, 1137 (8th Cir. 2004) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)) (alteration in original). To establish an official's deliberate indifference to a serious medical need, a plaintiff must demonstrate: (1) a substantial risk of serious harm to the inmate existed and (2) the prison official knew of and disregarded that risk. *Robinson v. Hager*, 292 F.3d 560, 563–64 (8th Cir. 2002) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). To establish such a violation, a plaintiff must demonstrate both an objective and subjective component. *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997) ("To prevail on an Eighth Amendment claim, an inmate must show both an objective element, that the deprivation was sufficiently serious, and a subjective element, that the defendant acted with a sufficiently culpable state of mind."). A plaintiff must show that the officials "knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996). This showing requires a "mental state akin to criminal recklessness: disregarding a known risk to the inmate's health." *Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006).

"[M]edical care . . . so inappropriate as to evidence intentional maltreatment" may also constitute deliberate indifference. *Fourte v. Faulkner Cty.*, 746 F.3d 384, 387 (8th Cir. 2014) (quoting *Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990)). Because a plaintiff must show the officials had states of mind akin to criminal recklessness, conduct constituting negligence, gross negligence or medical malpractice is insufficient to support a claim under the Eighth Amendment. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th

Cir. 1997) (citing *Estelle*, 429 U.S. at 106); *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995).

## B.    *Objectively serious medical need*

The first step in considering a claim of deliberate indifference is establishing whether the patient has a serious medical need.  To establish a serious medical need the patient must exhibit a medical issue that (a) had "been diagnosed by a physician as requiring treatment" or (b) was "so obvious that even a layperson would easily recognize the necessity for a doctor's attention."  *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995).  At Lindsay's intake screening, IMCC staff evaluated his diabetes.  Doc. 17 at 7–8.  IMCC staff prescribed insulin and designed a plan for managing this condition. *Id.* at 7–8, 20–21.  "Diabetes is a common yet serious illness that can produce harmful consequences if left untreated for even a relatively short period of time.  It constitutes a serious medical need."  *Lolli v. Cty. of Orange*, 351 F.3d 410, 419 (9th Cir. 2003) (citations omitted).  Accordingly, the record supports a finding that Lindsay had a serious medical need.  I will proceed to evaluate the subjective component of his deliberate indifference claim defendant by defendant.

## C.    *Named defendants*

### i.    *Francis*

#### a.    *The parties' arguments*

Lindsay alleges that Francis designed a treatment plan for Lindsay upon his arrival at the IMCC.  Doc. 5 at 4.  He alleges that the plan failed to provide for insulin.  *Id.* This failure led to other providers denying him insulin on November 5, 2018, resulting in him suffering erratic blood sugar and a seizure.  *Id.* at 4–6.  Francis responds that there is no discernable action in her course of conduct with which Lindsay can take issue. Doc. 16-1 at 13.  She argues that she is entitled to summary judgment because the most

8

Lindsay may allege is that she and other IMCC staff were negligent in managing his diabetes. *Id.* at 12.

### b.    Analysis

The record indicates that Lindsay met with Francis on October 30, 2018. Doc. 17 at 20–21. She diagnosed him with hypoglycemia and noted that his hypoglycemic episodes tended to occur during the night. *Id.* She designed a corresponding treatment plan that expressly incorporated another provider's insulin order. *See id.* at 7 (physician assistant prescribing insulin with dosages determined on a "sliding scale" based on blood sugar readings) and 20 (Francis' plan providing for Lindsay to have his blood sugar checked three times a day and follow the "sliding scale orders as needed"). She modified the earlier order by directing that no insulin be administered to Lindsay at bedtime. *Id.* at 20. She also discontinued his detemir prescription (a nightly insulin injection). *Id.* at 20–21. Following the seizure, she referred him to the UIHC. *Id.* at 62–63.

Francis' conduct does not constitute deliberate indifference.    It was limited to designing a treatment plan and referring Lindsay, post-seizure, to the UIHC. In so doing, she did not disregard Lindsay's medical needs; she attempted to manage them. Lindsay offers no evidence that her plan was "grossly inadequate or evidenced intentional maltreatment." *Dulany*, 132 F.3d at 1241. Nor does he offer evidence that it "deviate[d] from the professional standard of care or [was] unreasonable." *Johnson v. Leonard*, 929 F.3d 569, 577 (8th Cir. 2019). While Lindsay may disagree with the plan in hindsight, disagreement does not engender a constitutional violation. *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) ("[M]ere disagreement with treatment decisions does not rise to the level of constitutional violations."). Given this record, any flaws in Francis' treatment plan could constitute negligence or malpractice, at most. Neither characterization is sufficient to support a deliberate indifference claim. *Dulany*, 132 F.3d at 1239.

Moreover, even if I credit Lindsay's allegations that Jane Doe-1 and Jane Doe-2 improperly denied him insulin throughout the day on November 5, 2018, there is no evidence that Francis was involved in those decisions or that they reflected her treatment plan. She cannot be held liable for "inadequate treatment by other medical personnel because respondeat superior is not a basis for liability under 42 U.S.C. § 1983." *Smith v. Marcantonio*, 910 F.2d 500, 502 (8th Cir. 1990) (citing *Givens v. Jones*, 900 F.2d 1229, 1233 (8th Cir. 1990)); *see also Keeper v. King*, 130 F.3d 1309, 1315 (8th Cir. 1997) (prison doctor could not be held liable for nursing staff's failure to adequately treat inmate suffering a stroke). For all of these reasons, Francis is entitled to summary judgment.

### ii.   *Schmidt*

#### a.   *The parties' arguments*

Lindsay alleges that he presented to Schmidt at 9:30 p.m. on November 5, 2018, for a blood sugar check, which measured over 500 mg/dL. Doc. 5 at 6. Schmidt contacted physician John Doe who ordered Lindsay receive twelve units of insulin. *Id.* Lindsay alleges that he protested this quantity of insulin but that Schmidt and the physician insisted the dosage was appropriate. *Id.* He alleges that he experienced a seizure and suffered injury later that night. *Id.* Lindsay alleges that Schmidt's conduct constitutes deliberate indifference to his medical needs. Schmidt disputes this and argues that, at most, she could be found negligent for administering the insulin. Doc. 16-1 at 12–13.

#### b.   *Analysis*

The record indicates Schmidt observed that Lindsay's blood sugar was elevated. Doc. 17 at 29–31. She contacted a physician who prescribed insulin. *Id.* She then administered the quantity of insulin prescribed. *Id.* This conduct cannot even remotely constitute deliberate indifference. Schmidt recognized that Lindsay needed treatment, sought direction from a physician and administered the ordered treatment. Lindsay's

alleged objection to the quantity of insulin ordered does not transform conduct into deliberate indifference, as disagreeing with treatment is not actionable. *Jolly*, 205 F.3d at 1096.

Further, even if the quantity of insulin was too great and contributed to Lindsay's seizure, medication errors do not constitute deliberate indifference. *See Pyle v. Sims*, 5:15-CV-05245, 2017 WL 663518, at *6 (W.D. Ark. Jan. 30, 2017) ("A medication error alone, as to either the type or dose of medication, is not deliberate indifference. It is, at most, medical malpractice, which is not actionable under § 1983.") (collecting cases), report and recommendation adopted, 5:15-CV-05245, 2017 WL 662991 (W.D. Ark. Feb. 17, 2017); *Mallet v. Naphcare, Inc.*, C04-2009-MWB, 2005 WL 902134, at *7 (N.D. Iowa Apr. 19, 2005) ("Mallett at no point alleges that Nurse Terry knew that she was giving him the incorrect medication, let alone that giving him this medication would result in Mallett experiencing an allergic reaction. At the very most, Mallett's allegations raise claims of gross negligence on the part of Nurse Terry in distributing the wrong medication to Mallett.") (collecting cases).

Nor did Lindsay provide evidence that Schmidt's administration of the insulin amounted to intentional maltreatment constituting deliberate indifference. There is no evidence that Schmidt knew or believed the dosage was too great or would result in a seizure. In fact, the record indicates that Lindsay had received the same dosage of insulin three days earlier, without issue. Doc. 17 at 25–26. Finally, Schmidt cannot be held liable for inadequate treatment provided by other medical personnel. *Marcantonio*, 910 F.2d at 502.

Given this record, any alleged errors on Schmidt's part could constitute negligence or malpractice, at most. Neither characterization is sufficient to support a deliberate indifference claim. *Dulany*, 132 F.3d at 1239. Therefore, Schmidt is entitled to summary judgment.

### iii.    Forbes and Selden

#### a.    The parties' arguments

Lindsay's allegations against Forbes and Selden are identical.  Lindsay alleges that he suffered a seizure, that two of Lindsay's cellmates witnessed the seizure and alerted appropriate staff, and that, during the seizure, Forbes and Selden were "laughing and joking with each other[,] stating that [Lindsay] was 'dead' and that 'he didn't make it.'" Doc. 5 at 6–7.  Forbes and Selden deny Lindsay's allegation.  Doc. 11 at 3.  They respond that they were part of the group of IMCC staff who responded to the emergency code sent out during Lindsay's seizure and that they have no responsibility for administering care to IMCC inmates.  Doc. 16-1 at 3.  Therefore, they argue that they cannot be held liable for deliberate indifference.

#### b.    Analysis

The record indicates that Forbes' and Selden's only involvement in Lindsay's seizure is that they responded to the emergency code.  Prison guards are liable for deliberate indifference when they intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment.  *Robinson*, 292 F.3d at 564 (quoting *Estelle*, 429 U.S. at 104–05).  They also may be so liable when they fail to provide emergency care for which they have training.  *McRaven v. Sanders*, 577 F.3d 974, 983 (8th Cir. 2009) ("An officer trained in CPR, who fails to perform it on a prisoner manifestly in need of such assistance, is liable under § 1983 for deliberate indifference.") (citing *Tlamka v. Serrell*, 244 F.3d 628, 633 (8th Cir. 2001)).  The record does not indicate that Forbes or Selden hindered treatment in any way.  Nor does it indicate that they were trained to treat a seizing inmate.  Therefore, nothing in the record supports a finding that they were deliberately indifferent to Lindsay's medical needs.

Even crediting Lindsay's allegations, they do not support a finding of deliberate indifference.  Lindsay alleges that he started seizing and his cellmates went to seek help. Doc. 5 at 6–7.  He next alleges that Forbes and Selden mocked him.  *Id.*  But he does

not provide any context as to when this occurred relative to his receiving medical care. If Forbes and Selden actually mocked Lindsay, their conduct may have occurred while he was actively receiving care. While such conduct would be inappropriate, Lindsay's vague allegations preclude finding Forbes and Selden liable for delaying or hindering his access to medical care. *Brown v. Doel*, No. 4:18CV3020, 2018 WL 4055264, at *5 (D. Neb. Aug. 24, 2018) ("Although laughter might be inappropriate bedside manner, it does not amount to an Eighth Amendment violation.") (quoting *White v. Pernoud*, No. 2:04CV23 JCH, 2006 WL 1876959, at *3 (E.D. Mo. July 5, 2006)).

If Lindsay intends to argue that Forbes and Selden should have administered care instead of mocking him, he fails to provide evidence (or even allege) that they were actually trained to treat a seizing inmate yet refused to do so. For all of these reasons, Forbes and Selden are entitled to summary judgment.

### iv. *Qualified Immunity*

Lindsay sued each defendant individually and in his or her official capacity. Doc. 5 at 4. It is well established that "[a] suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent." *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006). To the extent Lindsay sues the named defendants in their individual capacities, they assert the affirmative defense of qualified immunity. Doc. 16-1 at 13–15. Qualified immunity shields a government official from individual liability when his conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *accord Davis v. Hall*, 375 F.3d 703, 711–12 (8th Cir. 2004). Because all of Lindsay's claims fail on their merits, I need not address the named defendants' immunity arguments.

### D.    Doe defendants

As noted above, Lindsay has also sued physician John Doe, pharmacist Jane Doe and nurses Jane Doe-1 and Jane Doe-2.  He has yet to identify them and they have not been served.  "[T]he Doe fiction may only be used until such time as the actual identities can be learned."  *Arias v. U.S. Immigration & Customs Enf't*, No. CIV 07-1959 ADM/JSM, 2009 WL 2171037, at *2 (D. Minn. July 17, 2009) (quoting *Kemper Ins. Cos. Inc. v. Fed. Express Corp.*, 115 F. Supp. 2d 116, 125 (D. Mass. 2000)).  Lindsay filed his amended complaint on August 2, 2019, and has not substantively participated in this lawsuit since filing a supplement on August 12, 2019.  I will evaluate Lindsay's claims against the Doe defendants to determine whether any of the claims should survive.  28 U.S.C. § 1915(e)(2)(B)(ii) ("[T]he court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim on which relief may be granted.").

### i.    Physician John Doe

Lindsay alleges physician John Doe was deliberately indifferent for ordering the 12 units of insulin Lindsay received on the evening of November 5, 2018.  Based on medical records supplied by the named defendants, John Doe appears to be Dr. Mark Fortson, M.D.  *See* Doc. 17 at 29–31 (medical records from November 5, 2018, indicating Schmidt contacted Dr. Fortson regarding Lindsay's blood sugar and Dr. Fortson prescribed a 12-unit dose of insulin).  Dr. Fortson recognized that Lindsay needed treatment and he prescribed insulin according to the sliding scale provision.  *Id.* at 29 (sliding scale prescribing 12 units of insulin when blood sugar measures over 400 mg/dL).  Lindsay alleged objection to the quantity prescribed does not mean that Dr. Fortson's decision constituted deliberate indifference, as disagreeing with treatment is not actionable.  *Jolly*, 205 F.3d at 1096.

Further, even if this quantity of insulin was too high and contributed to Lindsay's seizure, medication errors do not constitute deliberate indifference.  *See* Section

V(C)(ii)(b), *supra*.   Nor did Lindsay provide evidence that Dr. Fortson's prescription indicated intentional maltreatment constituting deliberate indifference.   There is no evidence Dr. Fortson knew or believed that the dosage was too high or would result in a seizure.   In fact, the record indicates that Lindsay had previously received the same dosage of insulin three days earlier, without issue.   Doc. 17 at 25–26.   Finally, Dr. Fortson cannot be held liable for inadequate treatment provided by other medical personnel. *Marcantonio*, 910 F.2d at 502.

Given this record, any alleged errors on Dr. Fortson's part could constitute negligence or malpractice, at most.   Neither characterization is sufficient to support a deliberate indifference claim. *Dulany*, 132 F.3d at 1239.   Therefore, I find it appropriate to dismiss Lindsay's claim against John Doe/Dr. Fortson.

### ii.      *Pharmacist Jane Doe*

Lindsay alleges that pharmacist Jane Doe failed to recognize or correct a transcription error resulting in his receiving 14 units of insulin on November 14, 2018.   Again, medication errors do not constitute deliberate indifference.   *See* Section V(C)(ii)(b), *supra*.   Nor did Lindsay provide evidence that this alleged mismanagement indicates intentional maltreatment.   There is no evidence that Jane Doe knew or believed that this dosage was too high.   Finally, she cannot be held liable for inadequate treatment provided by other medical personnel. *Marcantonio*, 910 F.2d at 502.

Given this record, any alleged errors on pharmacist Jane Doe's part could constitute negligence or malpractice, at most.   Neither characterization is sufficient to support a deliberate indifference claim. *Dulany*, 132 F.3d at 1239.   Therefore, I find it appropriate to dismiss Lindsay's claim against pharmacist Jane Doe.

### iii.      *Nurses Jane Doe-1 and Jane Doe-2*

Lindsay alleges he presented himself to Jane Doe-1 and Jane Doe-2 for blood sugar checks on November 5, 2018.   He alleges that his blood sugar measured over 300 mg/dL

at each check but that Jane Doe-1 and Jane Doe-2 denied him insulin, stating that there was no prescription for it and that he would have to wait until November 6, 2018, to see a prescriber. Based off of the medical records provided by the named defendants, one of these defendants appears to be Ann Thomas, R.N. *See* Doc. 17 at 51.[6]

The record confirms that Lindsay had his blood sugar checked three times during the day on November 5, 2018, not including the previously-discussed instance involving Schmidt. At those checks, his blood sugar measured 377 mg/dL, 242 mg/dL and 258 mg/dL. Doc. 17 at 38. The sliding scale order prescribed Lindsay insulin in response to such measurements. *Id.* at 7.

The named defendants' statement of undisputed material facts does not address these events. Crediting Lindsay's allegations, Jane Doe-1 and Jane Doe-2 took no action to treat him. Nor did they contact a prescriber, as Schmidt did, to seek further guidance. "Recognizing that it is a '[w]ell-known' fact that diabetes is a 'common yet serious illness that can produce harmful consequences if left untreated for even a short period of time,' several . . . Circuits have denied defendants summary judgment on Eighth Amendment claims alleging that prison officials deprived diabetic inmates of insulin . . . ." *Scinto v. Stansberry*, 841 F.3d 219, 230 (4th Cir. 2016) (quoting *Lolli*, 351 F.3d at 420) (collecting cases). Based on the current record, it is not proper to dismiss Lindsay's claims against Jane Doe-1 and Jane Doe-2.

---

[6] Lindsay identifies one of the nurses who allegedly refused him insulin on November 5, 2018, as the nurse who also allegedly provided him with 14 units of insulin on November 14, 2018. A November 14, 2018, medical record identifies Thomas as the individual directing Lindsay to take 14 units of insulin. Doc. 17 at 51.

## VI.    CONCLUSION

For the reasons set forth herein:

1.      The named defendants' motion (Doc. 16) for summary judgment is **granted** as to all claims asserted by plaintiff Michael Lindsay against defendants Nichole Francis, A.R.N.P., Stephanie Schmidt, L.P.N., Daniel Forbes and Franklin Selden.   Those defendants are hereby **dismissed** from this case.

2.      The claims asserted by plaintiff Michael Lindsay against physician John Doe and pharmacist Jane Doe are hereby **dismissed**.

3.      The claims asserted by plaintiff Michael Lindsay against defendants Jane Doe-1 and Jane Doe-2 remain pending at this time.

4.      Within **thirty (30) days** of the date of this order, the Iowa Attorney General's Office shall provide Lindsay any available discoverable material that may assist him in identifying defendants Jane Doe-1 and/or Jane Doe-2.  Within **sixty (60) days** of the date of this order, Lindsay must file an amended complaint that states the actual names of defendant Jane Doe-1 and/or defendant Jane Doe-2 such that the court may arrange for service of process on either or both of those defendants.  Alternatively, Lindsay may file a notice stating he remains unable to identify Jane Doe-1 or Jane Doe-2.   If Lindsay fails to comply with these requirements, this action will be dismissed for failure to prosecute.  *See* FED. R. CIV. P. 41(b).


**IT IS SO ORDERED.**

**DATED** this 1st day of June, 2021.

_____

Leonard T. Strand, Chief Judge